UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES J. MYSAK,
                            Plaintiff,

-v-

CITY OF NEW YORK, et al.,
                            Defendants.

17-CV-3340 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Charles J. Mysak filed this *pro se* action against New York Police Department Officers Gustavo Lopez, Noel Olivo, Margaret Abreu, Christopher O'Brien, Anthony Lavino, and Tatiana Paulovici ("Individual Defendants"), and the City of New York ("the City") (collectively, "Defendants"). Mysak alleges that Defendants violated his First, Fourth, and Fourteenth Amendment rights by seizing his books that were left unattended on the public sidewalk on the night of May 2, 2017. Defendants move to dismiss Mysak's second amended complaint—the operative complaint—in its entirety under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion to dismiss is granted in part and denied in part.

**I.    Background**

    **A.    Factual Background**

      The facts described below are taken from the second amended complaint, and, consistent with the Court's responsibility to liberally construe a *pro se* plaintiff's papers, from Mysak's oppositions to the motion to dismiss. *See Nicholas v. City of N.Y.*, No. 15 Civ. 9592, 2017 WL 766905, at *1 (S.D.N.Y. Feb. 27, 2017). Mysak's allegations are assumed to be true for purposes of deciding this motion.

      Mysak has owned and operated a bookstand in the vicinity of 68th Street and Columbus Avenue in Manhattan for more than twenty years. (Dkt. No. 35 ("SAC") at 5.) He alleges that,

1

on or about May 2 or May 3, 2017, six New York Police Department ("NYPD") officers dismantled his bookstand and seized his books, which he had left unattended outside overnight (the "May 2 Incident"). (*Id.*) The NYPD later returned his books, but Mysak alleges that one-third of his stock was permanently damaged and no longer fit for sale, and that the tarp he used to secure his books was never returned. (*Id.* at 6–7.)

Mysak also alleges that an attempted seizure occurred on May 24, 2017. (*Id.* at 6.) He claims that between 1:30 a.m. and 4:00 a.m. that day, police officers surveilled his bookstand and tried to seize his books again but desisted because he was present. (*Id.*) Moreover, Mysak alleges that Defendants engaged in selective enforcement against him because the Strand Bookstore (the "Strand") is allowed to leave its bookstand unattended overnight at its 5th Avenue and Central Park location, without the risk of seizure. (*Id.* at 5.)

Finally, on December 2, 2017, Mysak was served with an Office of Administrative Trials and Hearings ("OATH") summons for violation of New York City Administrative Code § 16-122(b) ("Administrative Code § 16-122(b)") for leaving his books unattended during the overnight hours between May 2, 2017 and May 3, 2017. (SAC at 6; *see* Dkt. No. 45 at 1–2.) Mysak alleges that the City issued this summons in retaliation for his initiation of this action. (SAC at 6.)

### B.     Procedural Background

On May 4, 2017, Mysak brought this action against the NYPD under 42 U.S.C. § 1983 for violations of his rights under the First and the Fourth Amendments. (Dkt. No. 2.) The Court *sua sponte* substituted the City for the NYPD as a Defendant, added two "John Doe" police officers as Defendants, and directed the City to identify the officers. (Dkt. No. 5 at 2–3.) After the City identified the officers as Gustavo Lopez and Noel Olivo, Mysak amended his complaint

for the first time, adding the officers as Defendants and raising a new claim under the Fourteenth Amendment. (Dkt. No. 15 at 1–2.)

On February 21, 2018, Mysak filed a second amended complaint—which is the operative complaint here—adding four more police officer Defendants: Margaret Abreu, Anthony Lavino, Christopher O'Brien and Tatiana Paulovici. (SAC at 1.) On April 20, Defendants moved to dismiss Mysak's second amended complaint in its entirety.[1] (Dkt. No. 43.) On May 21, Mysak responded and sought leave to file a third amended complaint, which purports to allege one more incident of police enforcement action against his bookstand that occurred on May 17, 2018. (Dkt. Nos. 47, 48.)

Thereafter, Defendants filed two briefs on June 11, one replying to Mysak's response to the motion to dismiss and another opposing Mysak's request to file a third amended complaint. (Dkt Nos. 54, 55.) Finally, on June 25, Mysak filed a reply to Defendants' briefs, and yet another motion seeking leave to file a fourth amended complaint which alleges that police officers selectively enforced parking laws against his van on June 11, 2018. (Dkt. Nos. 60-1, 61.) The Court first addresses Defendants' motion to dismiss and then turns to Mysak's two motions seeking leave to amend his complaint.

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

---

[1] NYPD officers Margaret Abreau, Anthony Lavino, Christopher O'Brien, and Tatiana Paulovici—although appearing after the filing of the motion to dismiss (Dkt. No. 62)—joined the motion to dismiss on March 8, 2019 (Dkt. No. 68).

3

556 U.S. 662, 678 (2009). The Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (quoting *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003)). "A complaint is . . . deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

A complaint filed *pro se* "must be construed liberally to raise the strongest arguments it suggests." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks omitted). "Nonetheless, a complaint must contain 'factual allegations sufficient to raise a right to relief above the speculative level,' including 'an allegation regarding [each] element necessary to obtain relief.'" *Haughton v. Clinton*, No. 15 Civ. 1160, 2015 WL 9244398, at *1 (S.D.N.Y. Dec. 17, 2015) (alteration in original) (quoting *Blanc v. Capital One Bank*, No. 13 Civ. 7209, 2015 WL 3919409, at *2 (S.D.N.Y. June 24, 2015)).

A court "should freely give leave [to amend a complaint] when justice so requires" under Rule 15(a). Fed. R. Civ. P. 15(a)(2). However, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

**III. Discussion**

   **A. First Amendment Claim**

Mysak first alleges that Defendants violated his First Amendment rights by seizing his unattended books from his bookstand on the night of March 2, 2017. (SAC at 2, 5.) Defendants contend that the First Amendment "protection does not extend to the storage of [Mysak]'s written material on the City streets and sidewalks unattended" (Dkt. No. 45 at 3), and that the regulation under which Mysak's books were seized—Administrative Code § 16-122(b)—does not regulate or impose substantial burdens on speech, and therefore does not implicate the First Amendment (*id.* at 3–4). In response, Mysak argues that the storage of books warrants constitutional protection because it is essential to the vending, display, and sale of books—which he claims are protected First Amendment activities. (Dkt. No. 61 at 2.) Moreover, Mysak argues that enforcing Administrative Code § 16-122(b) against him violates the First Amendment because it imposes a "substantial burden on expressive conduct." (*Id.*) The Court addresses first whether Administrative Code § 16-122(b) regulates speech and therefore implicates the First Amendment, and then turns to whether the storage of books warrants First Amendment protection.

The threshold question under the First Amendment is whether the regulation at issue targets speech or regulates conduct. The First Amendment protects freedom of speech and certain kinds of conduct that are "inherently expressive." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). But it "does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).

Mysak has not demonstrated that Administrative Code § 16-122(b) targets speech or directly implicates speech in any way. Indeed, this regulation prohibits anyone from leaving

5

"any box, barrel, bale of merchandise or other movable property . . . upon any . . . public street." N.Y.C. Admin. Code § 16-122(b). The plain reading of this subsection is that one cannot leave his or her property unattended on a public street. It targets the conduct of leaving property unattended in the public space, irrespective of the type and the content of property. In other words, it does not single out those items that may be potentially expressive, such as posters or magazines. Nor does it target any specific speaker for disparate or unfavorable treatment. Moreover, contrary to Mysak's allegation that this subsection is targeted at abandoned vehicles (Dkt. No. 61 at 2), the statutory history indicates that it was adopted to help maintain the sanitation of public space in the city more generally, *see Betancourt v. Giuliani*, No. 97 Civ. 6748, 2000 WL 1877071, at *3 (S.D.N.Y. Dec. 26, 2000). In light of these considerations, the Court concludes that Administrative Code § 16-122(b) is directed at specific non-expressive conduct and thus does not directly regulate speech.

Mysak nonetheless argues that Administrative Code § 16-122(b) "impose[s] a substantial burden on expressive conduct" because he is prevented from selling his books without his bookstand. (Dkt. No. 61 at 2.) To be sure, "every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986). But that does not mean that each such sanction under a law is subject to First Amendment scrutiny "simply because each particular [sanction] will have some effect on the First Amendment activities of those subject to sanction." *Id.* at 706–07 (holding that statute regulating non-expressive activity did not implicate First Amendment, even though its application would cause plaintiffs "to move their bookselling business to another location"). As explained above, the regulation at issue here is plainly targeted at the conduct of leaving one's

belongings unattended on the street. To the extent that this regulation might affect speech, the impact is purely incidental. Accordingly, the First Amendment is "not implicated." *Id.*

Because Administrative Code § 16-122(b) does not implicate the First Amendment, Mysak's First Amendment claim necessarily fails, even assuming *arguendo* that the storage of his books warrants First Amendment protection. The Court therefore need not decide whether Mysak's storage of books is entitled to any First Amendment protection.

### B. First Amendment Retaliation Claim

Mysak next argues that Defendants issued him a summons regarding the May 2 incident in order to retaliate against him for initiating this lawsuit. Defendants contend that this retaliation claim fails because the summons was issued on the basis of probable cause that Mysak violated Administrative Code § 16-122(b). The Court agrees.

In order to properly plead a retaliation claim, a plaintiff must show: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). But if the alleged retaliation is based on a probable cause, a First Amendment retaliation claim fails. *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012).[2]

---

[2] The Supreme Court has recently held that "a plaintiff may prevail on a civil claim for damages for First Amendment retaliation for an arrest made pursuant to a retaliatory official municipal policy, even if there was probable cause for the arrest, if 'the alleged constitutional violation was a but-for cause' of the arrest." *Higginbotham v. Sylvester*, 741 F. App'x 28, 31 (2d Cir. 2018) (quoting *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1952 (2018)). To the extent that *Lozman* applies, Mysak's retaliation claim against the City nevertheless fails because the facts he alleges do not show that the City had any retaliatory official policy, or that such a policy—if it exists—"was a but-for cause" of the issuance of the summons. *Lozman*, 138 S. Ct. at 1952.

In the instant case, Defendants contend that because Mysak left his books unattended on a public street overnight from May 2, 2017 to May 3, 2017, he violated Administrative Code § 16-122(b). Specifically, when police officers observed that there were unattended books and a bookstand on the sidewalk near 68th Street and Columbus Avenue, they had ample probable cause to seize that property as in violation of Administrative Code § 16-122(b). And after the police identified Mysak as the owner of those books due to Mysak's civil complaint, they also had probable cause to issue Mysak a summons for a violation of the city code.[3] (Dkt. No. 44-2.)

Mysak does not address this argument, other than to state that he does not admit that his belongings were unattended when police officers seized them on the night of May 2, 2017. (Dkt. No. 47 at 1.) But Mysak never affirmatively alleges that he was *present* and that the books were *attended to* that night, even though such facts should be well within his personal knowledge. Moreover, the other allegations in the operative complaint clearly indicate that the books were left unattended. For example, Mysak argues that, in contrast to the Strand, his "stand is put under surveillance . . . [and] when [he] leave[s] for home . . . [his] stand then becomes subject to seizure." (SAC at 5.) He also describes to an incident on May 24, 2017, in which NYPD officers' attempt to seize his books was thwarted because he was present at the bookstand. (SAC at 6.) If Mysak had been present on the night of May 2, 2017, the police officers presumably would not have had valid probable cause to seize his books or to issue him a summons. Even if Mysak insists that he does not admit that his belongings were left unattended on the night of May 2, his other allegations in the operative complaint are to the contrary.

---

[3] The seven-month interval between May 2, 2017—the date of the seizure—and December 2, 2017—the date of the issuance of the summons—does seem unusual. Nonetheless, it is clear that Mysak's violation of Administrative Code § 16-122(b) constituted valid probable cause for both the seizure and the issuance of the summons, and that is dispositive.

8

Because Defendants had ample probable cause to issue Mysak a summons, Mysak's First Amendment retaliation claim fails.

### C. Fourth Amendment Claim

Mysak also raises a Fourth Amendment claim that Defendants illegally seized his property "without warrant or Court Order." (SAC at 5.) Defendants put forward the same defense of probable cause. (Dkt. No. 45 at 5.)

A warrantless search and seizure may be carried out if the police officer has probable cause to believe that a violation of the law has occurred or there is evidence of crime, and "the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Place*, 462 U.S. 696, 701 (1983). As explained above, police officers had probable cause to seize Mysak's books without a warrant when they concluded that the unattended books at Mysak's bookstand constituted a plain violation of Administrative Code § 16-122(b), a criminal statute. *Betancourt v. Bloomberg*, 448 F.3d 547, 553 (2d Cir. 2006) ("[Section] 16-122(b) is a criminal statute."). And because the unattended books are direct evidence of that violation, and they are "readily movable contraband" in a public space, the books were subject to warrantless seizure before they could be "spirited away." *Florida v. White*, 526 U.S. 559, 565 (1999). Because the seizure was based on probable cause and was within an exception to the warrant requirement, Mysak's claim for unlawful seizure also fails.

### D. Fourteenth Amendment Claims

Mysak's operative complaint and other submissions can be construed as alleging two separate challenges under the Fourteenth Amendment: first, that Defendants deprived him of his property without procedural due process by seizing his books before issuing a summons or holding a hearing (Dkt. No. 61 at 2–3); and second, that Defendants denied him equal protection

9

because they selectively enforced the law only against him but not against the Strand. (SAC at 5–6.) The Court addresses each of these challenges in turn.

### 1. Procedural Due Process Claim

To properly plead a procedural due process claim, a plaintiff must allege that he "possessed a protected . . . property interest, and that he was deprived of that interest without due process." *McMenemy v. City of Rochester*, 241 F.3d 279, 285–86 (2d Cir. 2001) (quoting *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) (per curiam)).

Mysak clearly possesses a protected property interest in his books. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571–72 (1972) ("[T]he property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."). He alleges that he was deprived of that interest from the time the books were seized until they were returned. In addition, the tarp that Mysak used to secure his books was allegedly missing from the returned items, and one-third of Mysak's books were allegedly damaged.

"[A] temporary deprivation of property is sufficient for due process purposes." *Bray v. City of N.Y.*, 346 F. Supp. 2d 480, 489 (S.D.N.Y. 2004) (citing *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991)). The Court must consider whether the procedural safeguard accompanying the deprivation was adequate.

"The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and [an] opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (internal quotation marks and alterations omitted). Although "[d]ue process is flexible and calls for such procedural protections as the particular situation demands," *id.* at 334 (citation omitted), it normally requires some type of notice and an opportunity to be heard prior to the deprivation, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). But in certain circumstances, an adequate post-deprivation hearing can also satisfy the

procedural due process requirement. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993); *IPT Co. v. U.S. Dept. of Treasury*, No. 82 Civ. 5542, 1994 WL 613371, at *6 (S.D.N.Y. Nov. 4, 1994) ("In the case of a temporary deprivation of property, predeprivation hearings are generally not required." (citing *Mathews*, 424 U.S. at 333–34)).

Here, it is clear from the record that no notice or hearing was afforded prior to the seizure of Mysak's books, but understandably so. When the police noticed the unattended books on the sidewalk on the night of May 2, 2017, they had a legitimate governmental interest in enforcing Administrative Code § 16-122 to ensure the sanitary condition of the sidewalk. Because no one was present with the books, the police officers were not able to readily identify the owner and give him or her adequate notice, let alone hold a hearing. The circumstances surrounding this seizure reasonably excuse Defendants from the traditional requirement of a pre-deprivation hearing. *Mathews*, 424 U.S. at 334 ("[D]ue process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances." (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961) (internal quotation marks omitted))).

In addition, to the extent that Mysak argues that he did not receive a post-deprivation remedy, that argument is rejected. Not only does the December 2, 2017 summons provide Mysak an opportunity to be heard, but he can also avail himself of the post-deprivation remedies under New York state law. *See Parratt v. Taylor*, 451 U.S. 527, 538 (1981) (holding availability of adequate state post-deprivation remedy satisfies procedural due process where pre-deprivation process is impractical); *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) ("[A]n Article 78 proceeding [under the New York Civil Practice Law] constitutes an adequate postdeprivation procedure under the Due Process Clause.").

The concerning aspect of Mysak's allegations is Defendants' delay in notifying Mysak of his alleged violation of Administrative Code § 16-122. The right to notice of the nature of the charges against one is at the core of due process. *See Brown v. Ashcroft*, 360 F.3d 346, 350–51 (2d Cir. 2004). It appears that Defendants never issued Mysak any summons to inform him of the violation justifying the book seizure until December 2, 2017—almost seven months after the seizure. Mysak's allegations, construed liberally, suggest that Defendants had ample opportunity to give Mysak "reasonable notice of a charge against him" after they had identified him as the owner of those books from the instant lawsuit. *In re Oliver*, 333 U.S. 257, 273 (1948). Mysak alleges that he reopened his bookstand at the same location in May, suggesting that Defendants could have identified him as the book owner and notified him of the violation and seizure much sooner than December 2. (Dkt. No. 61 at 2.) And any administrative burden in notifying Mysak of the charge against him presumably would have been *de minimis*, given that Mysak's bookstand allegedly has been at the same location and Mysak directly interacted with the City through this lawsuit and in reclaiming his books.

To be sure, it is entirely possible that discovery may reveal that Mysak was notified of the charge against him and his post-deprivation remedies before December 2, 2017. But at the motion to dismiss stage, Mysak's allegations of Defendants' failure to afford him with a reasonable notice in a timely fashion are sufficient to pass muster. *Bray v. City of N.Y.*, No. 04 Civ. 8255, 2005 WL 2429504, at *8 (S.D.N.Y. Sept. 30, 2005) (finding the City violated the due process requirement by failing to provide notice after seizing plaintiffs' bicycles pursuant to Administrative Code § 16-122.).

### 2. Equal Protection Claim

Mysak next argues that Defendants violated the Equal Protection Clause of the Fourteenth Amendment, on the basis that Defendants enforced the city regulations against him but not the Strand or nearby news racks.

It is well established that "[t]he Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Mysak asserts a selective enforcement claim, that he was "treated differently than an identifiable, similarly situated group of individuals for malicious reasons." *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 543 (S.D.N.Y. 2006); *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980). To establish a selective enforcement claim, a plaintiff is required to show both (1) that he was treated differently than others who were similarly situated; and (2) "that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair*, 627 F.2d at 609–10.

Defendants argue that Mysak fails to establish that the Strand or the news racks are "similarly situated" to himself. *Id.* at 609. Generally, the similarly situated prong presents "a factual issue that should be submitted to the jury." *Harlen Assocs.*, 273 F.3d at 499 n.2. But a court must dismiss the claim if it determines that it is implausible "that a jury could ultimately determine that the comparators are similarly situated." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011). Of course, "[c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." *Bishop v. Best Buy, Co.*, No. 08 Civ. 8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) (citation omitted).

The news racks are distinguishable from Mysak's bookstand as a matter of law. Under New York City law, news racks are specifically regulated with unique registration, maintenance,

and insurance requirements. *See generally* N.Y.C. Admin. Code § 19-128.1. Only when an owner of a news rack satisfies these stringent requirements can the news rack be placed on the sidewalk. The city law also requires the owner of each news rack to affix his or her name and contact information to the news rack. N.Y.C. Admin. Code § 19-128.1(b)(4). Regulated under a completely different regime, news racks are not similar to the unattended books left by Mysak on the sidewalk on the night of May 2, 2017. *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (recognizing that the "similarly situated" prong must be judged based on whether the plaintiff and the comparators were subject to the same workplace standards).

Defendants next contend that the Strand is dissimilar from Mysak because it maintains a permit from the City under which it can legally maintain and operate two bookstalls and up to eight related tables near Central Park. (Dkt. No. 44-3 art. 6(a).) Nonetheless, at the motion to dismiss stage, the Court is confined to considering "the allegations contained within the four corners of [the] complaint . . . or [] documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998) (citation omitted). Therefore, the Court cannot consider the Strand's permit that was submitted by Defendants in connection with their motion to dismiss, because it was not "attached to the complaint as [an] exhibit[], incorporated into the complaint by reference, or integral to the complaint." *Gersbacher v. City of N.Y.*, 134 F. Supp. 3d 711, 718 (S.D.N.Y. 2015) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)). Assuming that the permit is admissible evidence, it may be considered at the summary judgment stage.[4]

---

[4] Defendants do not specifically argue that Mysak's allegations fail to meet the second prong—"that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith

Limiting the Court's review to Mysak's allegations and assuming them to be true, the Court concludes that Mysak has sufficiently pleaded a selective enforcement claim because the Strand has maintained "tables, two full kiosks, and a storage shed . . . [that] are . . . unattended after dusk" but were never seized by Defendants despite running afoul of Administrative Code § 16-122(b) on its face. (Dkt. No. 47 at 2.) Therefore, Defendants' motion to dismiss Mysak's selective enforcement claim is denied.

### E. Municipal Liability

The Court now turns to the question of municipal liability because this lawsuit is brought against the City. In general, "a plaintiff may not hold a municipality liable pursuant [to] § 1983 under a theory of *respondeat superior*." *Cantey v. City of N.Y.*, No. 10 Civ. 4043, 2012 WL 6771342, at *4 (S.D.N.Y. Dec. 11, 2012) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978)). To hold a city liable, a plaintiff must demonstrate: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Id.* (quoting *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2009)).

Here, Defendants challenge only the third element, namely, that Mysak fails to establish any constitutional violation. As explained above, however, Mysak has pleaded sufficient facts for his procedural due process and selective enforcement claims to survive a motion to dismiss. Therefore, Defendants' argument against *Monell* liability fails.

---

intent to injure a person." *LeClair*, 627 F.2d at 609–10. Mysak does allege that Defendants have "set up a caste system for book vendors" with respect to enforcement of the law. It is unclear whether this allegation, construed liberally, is sufficient to satisfy the second prong. In any event, because Defendants have not challenged it, the Court does not resolve this question.

15

## F. Individual Liability

Defendants argue that the Individual Defendants are entitled to qualified immunity because Mysak fails to establish any constitutional violations.

It is well established that police officers may be entitled to qualified immunity from liability for certain discretionary actions alleged to violate constitutional or statutory rights. *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001). Qualified immunity applies if either (1) a police officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," or (2) "it was 'objectively reasonable for him to believe that his actions were lawful at the time of the challenged act.'" *Id.* (first quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); second quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)) (internal quotation marks omitted).

Defendants challenge Mysak's ability to satisfy both elements. But as the Court has concluded, Mysak has pleaded sufficient facts to plausibly allege that the Individual Defendants violated his rights under the Due Process Clause and the Equal Protection Clause. Because both of these claims stem from "clearly established . . . constitutional rights," *id.*, Defendants' argument fails.

Defendants next maintain that "it was objectively reasonable for each of the individual officers to believe that they were not violating established federally protected rights" in light of Mysak's alleged violation of the city regulation. (Dkt. No. 54 at 6; *see* Dkt. No. 45 at 9.) The Court is unpersuaded. Even if the Individual Defendants had probable cause to seize Mysak's books, that probable cause would not justify the alleged denial of Mysak's due process right in failing to provide him with adequate notice, or the alleged violation of Mysak's equal protection right by treating him differently from the Strand. Defendants fail to explain why it was objectively reasonable for the Individual Defendants to issue a summons seven months after the

16

deprivation of Mysak's property interest, or to selectively enforce the same regulation against Mysak but not against the Strand. Accordingly, the Individual Defendants have failed to establish that they are entitled to qualified immunity at this stage of the case.

### G. Motion for Leave to Amend

Finally, Mysak has also filed two motions seeking leave to amend his complaint. His proposed third amended complaint alleges that another police seizure occurred on May 17, 2018. (Dkt. No. 48 at 5.) His proposed fourth amended complaint challenges Defendants' alleged selective enforcement of parking regulations against him. (Dkt. No. 60-1 at 6.) Defendants object to Mysak's motion for leave to file a third amended complaint. (Dkt. No. 55.)

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." However, a court "has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy*, 482 F.3d at 200. A proposed amendment "is futile if the proposed amended complaint would fail to state a claim on which relief could be granted." *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012).

Defendants contend that Mysak's proposed third amended complaint is futile for three reasons: (1) his new claims are not ripe for review because the state administrative review process is not completed; (2) the doctrine of *Younger* abstention requires the Court to dismiss his new claims because there is still an ongoing state proceeding; and (3) he fails to state any cognizable claims. (Dkt. No. 55 at 3–8.) The first two arguments are both premised on the assumption that the state administrative review process regarding Mysak's claims has not yet been completed. (Dkt. No. 55 at 3 ("The May 17, 2018 summonses issued to plaintiff have not yet been heard by OATH[.]"); *id.* at 5 ("[The OATH proceeding] represents an ongoing State action[.]").) However, the OATH hearing that Defendants rely on was scheduled to occur on

July 6, 2018. (Dkt. No. 48 at 9.) Presumably this hearing would have occurred by now. Defendants have not filed any additional evidence substantiating their assertion that there is still an ongoing state proceeding regarding Mysak's claims after the OATH hearing. This is fatal to Defendants' first two arguments against the proposed amendment.

Defendants then argue that Mysak fails to adequately state any claims with respect to the May 17, 2018 seizure. But Defendants do not specifically address Mysak's new potential selective enforcement claim under the Fourteenth Amendment other than relying on their earlier motion to dismiss briefs. (Dkt. No. 55 at 8 ("Plaintiff's remaining claims fail for the reasons set forth in defendant's motion to dismiss the Second Amended Complaint[.]").) In his potential new claim challenging the May 17, 2018 seizure, Mysak alleges that his books were again seized pursuant to Administrative Code § 16-122(b). (Dkt. No. 48 at 9.) As explained earlier, the Strand's bookstand is alleged to have run afoul of the same regulation, but it was allegedly not seized. For the same reasons, then, Mysak may be able to state a plausible claim that Defendants selectively enforced this regulation again. Defendants have not shown that Mysak's proposed amendment is clearly futile.

With respect to Mysak's proposed fourth amended complaint, he asserts a selective enforcement claim stemming from an incident in which the NYPD towed away his van for violations of the city parking regulations but left other similarly situated vehicles alone. (Dkt. No. 60-1 at 6.) Defendants have not responded to this motion. Taking all his allegations as true, Mysak's proposed amendment contains enough factual allegations that "state a claim to relief that is *plausible on its face*," and accordingly, is not futile. *South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110 (2d Cir. 2009) (citation omitted); *Perfect Pearl Co.*, 889 F. Supp. 2d

at 459 ("The question whether an amendment would be futile is therefore governed by the same standard that applies to whether an already-filed pleading states a claim.").

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss the second amended complaint is GRANTED in part and DENIED in part.

Mysak's motions for leave to amend his complaint are GRANTED.

On or before May 1, 2019, Mysak shall file a single amended complaint, which will be the "Third Amended Complaint," incorporating <u>all</u> of his remaining claims—that is, (1) the surviving claims involving the alleged May 2, 2017 incident (due process and equal protection), (2) his proposed claims based on the alleged May 17, 2018 seizure, and (3) his proposed claims based on the towing of his van.

The Clerk of Court is directed to close the motion at Docket Number 43.

SO ORDERED.

Dated: March 28, 2019
       New York, New York

_____
J. PAUL OETKEN
United States District Judge


*COPY MAILED TO PRO SE PARTY BY CHAMBERS*